UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| **Edgar Searcy**, # 04726-031, | C/A No. 6:06-1418-GRA-WMC |
| Plaintiff, | |
| vs. | Report and Recommendation |
| **NFN Skinner**, Inmate, | |
| Defendant. | |

# *Background of this Case*

The plaintiff is a federal inmate at FCI-Estill.  The defendant, whose first name is not known by the plaintiff, was an inmate at FCI-Bennettsville on December 12, 2005.  On that date, according to the plaintiff, the defendant attacked the plaintiff at FCI-Bennettsville.

Specifically, the plaintiff alleges or contends: *(1)* on the morning of December 12, 2005, the staff at FCI-Bennettsville received a note stating that the plaintiff should be removed from the general population because of his crimes; *(2)* Lieutenant Miller apprised the plaintiff of the note; *(3)* the plaintiff informed Lieutenant Miller that he would not be able to work and would lose his only source of income; *(4)* later on the morning of December 12, 2005,

1

someone tried to open the lock on the plaintiff's locker; *(5)* the plaintiff reported the crime to Lieutenant Miller and asked that the video tapes of the area be examined to determine who was stalking the plaintiff; *(6)* on December 12, 2005, at approximately 3:00 p.m., "the defendant committed series of federal and state crimes with the intent to harass and intimidate the plaintiff into checking into protective custody and loose [sic] privileges such as employment and a source of income[;]" *(7)* the plaintiff was treated for his injuries and was placed in "involuntary" protective custody; *(8)* federal prison officials have "abused the victim (plaintiff) by subjecting the plaintiff to punative [sic] conditions, including denial of employment and income," which was [sic] the defendants [sic] goals[;]" *(9)* at 9:00 p.m. on December 12, 2005, the plaintiff placed in the institutional mail system a request to staff, wherein he requested restitution for lost wages and replacement of his broken glasses; *(10)* prison staff refused to assist the plaintiff; *(11)* on December 14, 2005, the plaintiff wrote officials at FCI-Bennettsville "to inform them that a lawsuite [sic] is pending against the defendant and requested" that the surveillance tapes and evidence be preserved; *(12)* on an unknown date and in a prison disciplinary proceeding, the defendant was found guilty of assaulting the plaintiff; *(13)* the plaintiff requested a criminal prosecution, which was "declined" by an Assistant United States Attorney; *(14)* the

2

defendant's crimes "have caused a loss in employment income at Unicor," loss of wages, loss of personal property, pain and suffering; and *(15)* this "was the <u>intent</u> of the defendant." The plaintiff seeks $20,000 in damages for physical and emotional mental anguish, $5,000 "to pay for the crimes committed, $500 for property loss, $24,500 in restitution for lost wages, $25,000 in punitive damages, and Court costs and legal costs[.]"

In the "ARGUMENT" portion of the complaint, the plaintiff also contends: *(1)* it a federal crime under the RICO Act, 18 U.S.C. § 1964(c), to commit a series of crimes with the express intent of terrorizing a person and causing a loss of employment and wages; *(2)* a series of events caused the plaintiff to lose privileges, including employment and wages, and caused suffering and pain; *(3)* the purpose was done with malice in mind, and done in an organized manner; *(4)* the defendant committed assault and caused pain and suffering; *(5)* "All of this was done with intent to cause a loss of employment and wages[;]" *(6)* the defendant caused "PHYSICAL" anguish and damaged personal property; *(7)* restitution is appropriate and necessary to compensate the "DAMAGE" caused by the defendant; *(8)* the defendant acted in conspiracy; *(9)* punitive damages should be awarded; *(10)* the plaintiff seeks a declaratory judgment that the defendant violated the RICO Act for the

3

purpose of facilitating a hate crime; **(11)** the plaintiff also seeks a court declaratory judgment that the defendant committed the "crime of hate," and engaged in discrimination in civil rights, assault and battery, and aggravated assault with the intent to "accomadate [sic] the RICO" Act; and **(12)** the plaintiff seeks a total of $75,000 in damages, restitution, and "other relief which is just and fair."

### *The Plaintiff's Prior Litigation in Other Jurisdictions*

The plaintiff is serving a one hundred eighty (180) month sentence as a career offender for a conviction of using interstate commerce (the internet) to engage in sexual activity with a minor. United States v. Searcy, 299 F.Supp.2d 1285, 2003 U.S.Dist. LEXIS® 24093 (S.D.Fla. 2003), *affirmed*, 418 F.3d 1193, 2005 U.S.App. LEXIS® 15426 (11th Cir. 2005), *cert. denied*, Searcy v. United States, 163 L.E.2d 918, 126 S.Ct. 1007, 2006 U.S. LEXIS® 491 (U.S., January 9, 2006). The district court in Florida granted the government's motion for an upward departure (on the basis that the plaintiff was a recidivist) and sentenced the plaintiff to the maximum of one hundred eighty (180) months.

The opinions in <u>United States v. Searcy</u> at both the district court and circuit court level indicate that the plaintiff has prior convictions (relating to sexual activity with minors) in Kansas and Florida. *See also* <u>Searcy v. Simmons</u>, 299 F.3d 1220, 1222, 2002 U.S.App. LEXIS® 16653 (10th Cir. 2002)(noting that in January of 1997, the petitioner pled *nolo contendere* to sexual exploitation of a child and was sentence to sixty-five months in prison). The State of Kansas had attempted to commit the plaintiff as a sexual predator, but was unable to do so because the State of Kansas had not tried the plaintiff within the sixty-day deadline of the plaintiff's waiver of a probable cause hearing. <u>In the Matter of the Care and Treatment of Edgar J. Searcy</u>, 274 Kan. 130, 131, 49 P.3d 1, 3, 2002 Kan. LEXIS® 430 (2002)(noting that the plaintiff's Florida convictions arose out of two separate marriages where the plaintiff molested step-daughters in each marriage).

The United States District Court for the Middle District of Florida dismissed with prejudice a suit by the plaintiff against the Microsoft Corporation and the America on Line Corporation for failure to state a claim upon which relief can be granted. *See* <u>Edgar Searcy v. Microsoft Corporation</u>, 2005 WESTLAW® 1163114 [no LEXIS® citation available] (M.D.Fla, May 4, 2005), where the plaintiff sought damages for use of a software device that surreptitiously records a computer user's internet and e-mail activities and

5

stores them on the computer. The district court in Florida also relied on Eleventh Circuit case law allowing a district court to take into account prior litigation in dismissing a questionable claim, and noted that the plaintiff had brought twenty-two (22) federal cases and had been involved in thirty-one (31) cases as a named party. Searcy v. Microsoft Corporation, 2005 WESTLAW® 1163114, at * 3 & nn. 14-15.[1]

# *Discussion*

Under established local procedure in this judicial district, a careful review[2] has been made of the *pro se* complaint pursuant to the procedural provisions of 28 U.S.C. § 1915; 28 U.S.C. § 1915A; and the Prison Litigation Reform Act. The review has been conducted in light of the following precedents: Denton v. Hernandez, 504 U.S. 25, 118 L.Ed.2d 340, 112 S.Ct. 1728, 1992 U.S. LEXIS® 2689 (1992); Neitzke v. Williams, 490 U.S. 319, 324-325, 1989 U.S. LEXIS® 2231 (1989); Haines v. Kerner, 404 U.S. 519 (1972); Nasim v. Warden, Maryland House of Correction, 64 F.3d 951, 1995

---

[1]All of the cases listed by the United States District Court for the Middle District of Florida in Searcy v. Microsoft were filed prior to the enactment of the Prison Litigation Reform Act (PLRA) in 1996. Hence, it cannot be determined whether the plaintiff has "struck out" under the PLRA.

[2]Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule 73.02, D.S.C., the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the District Court.

U.S.App. LEXIS® 26108 (4th Cir. 1995)(*en banc*), *cert. denied*, 516 U.S. 1177, 134 L.Ed.2d 219, 116 S.Ct. 1273, 1996 U.S. LEXIS® 1844 (1996); Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983); and Boyce v. Alizaduh, 595 F.2d 948 (4th Cir. 1979)(recognizing the district court's authority to conduct an initial screening of a *pro se* filing).[3]  *Pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied*, Leeke v. Gordon, 439 U.S. 970 (1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case.  *See* Hughes v. Rowe, 449 U.S. 5, 9-10 & n. 7 (1980)(*per curiam*); and Cruz v. Beto, 405 U.S. 319 (1972).  When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true.  Fine v. City of New York, 529 F.2d 70, 74 (2nd Cir. 1975).  Even under this less stringent standard, the § 1983 complaint is subject to summary dismissal.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a claim currently

---

[3] Boyce has been held by some authorities to have been abrogated in part, on other grounds, by Neitzke v. Williams, 490 U.S. 319 (1989)(insofar as Neitzke establishes that a complaint that fails to state a claim, under Federal Rule of Civil Procedure 12(b)(6), does not by definition merit *sua sponte* dismissal under 28 U.S.C. § 1915(e)(2)(B)(i) [formerly 28 U.S.C. § 1915(d)], as "frivolous").

7

cognizable in a federal district court. Weller v. Department of Social Services, 901 F.2d 387, 1990 U.S.App. LEXIS® 6120 (4th Cir. 1990).

It is readily apparent that the defendant is not subject to suit under 42 U.S.C. § 1983 or the Bivens doctrine[4] because the defendant has not acted under color of state or federal law. In order to state a cause of action under 42 U.S.C. § 1983 or under the Bivens doctrine, a plaintiff must allege that: *(1)* the defendant deprived him or her of a federal right, and *(2)* did so under color of state law or federal law. *See* Gomez v. Toledo, 446 U.S. 635, 640 (1980); and American Mfr. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50-52,

---

[4]In Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 397 (1971), the Supreme Court established a direct cause of action under the Constitution of the United States against federal officials for the violation of federal constitutional rights. "Bivens is the case establishing, as a general proposition, that victims of a constitutional violation perpetrated by a federal actor may sue the offender for damages in federal court despite the absence of explicit statutory authorization for such suits." Wright v. Park, 5 F.3d 586, 589 n. 4, 1993 U.S.App. LEXIS® 25129 (1st Cir. 1993), which *cites*, *inter alia*, Carlson v. Green, 446 U.S. 14, 18 (1980)(restating Bivens rule).

A Bivens claim is analogous to a claim under 42 U.S.C. § 1983: federal officials cannot be sued under 42 U.S.C. § 1983 because they do not act under color of *state* law. *See* Harlow v. Fitzgerald, 457 U.S. 800, 814-820 & n. 30 (1982). Harlow, which is often cited for the principle of the qualified immunity of state officials for acts within the scope of their employment, was brought against a federal official. In footnote 30 of the opinion in Harlow, the Supreme Court stated that Harlow was applicable to state officials sued under 42 U.S.C. § 1983. In other words, case law involving § 1983 claims is applicable in Bivens actions and *vice versa*. *See* Farmer v. Brennan, 511 U.S. 825, 128 L.Ed.2d 811, 114 S.Ct. 1970, 1994 U.S. LEXIS® 4274 (1994); Bolin v. Story, 225 F.3d 1234, 1241-1242, 2000 U.S.App. LEXIS® 22501 (11th Cir. 2000); and Campbell v. Civil Air Patrol, 131 F.Supp.2d 1303, 1310 n. 8, 2001 U.S.Dist. LEXIS® 2542 (M.D.Ala. 2001)(noting that, since courts have expanded the Bivens remedy, usually used for a Fourth Amendment violation, to allow direct action under First and Fifth Amendments, "the court shall refer interchangeably to cases" decided under both § 1983 and Bivens).

1999 U.S. LEXIS® 1711 (1999). *See also* Hall v. Quillen, 631 F.2d 1154, 1155-1156 & nn. 2-3 (4th Cir. 1980), *cert. denied*, 454 U.S. 1141 (1982).

The district court in Hall v. Quillen, supra, had disposed of the case against a physician and a court-appointed attorney on grounds of immunity. In affirming the district court's order, the Court of Appeals, however, indicated that lower courts should first determine whether state action occurred:

> * * * But immunity as a defense only becomes a relevant issue in a case such as this if the court has already determined affirmatively that the action of the defendant represented state action. This is so because state action is an essential preliminary condition to § 1983 jurisdiction, and a failure to find state action disposes of such an action adversely to the plaintiff. * * *

Hall v. Quillen, 631 F.2d at 1155 (citations omitted). *See also* Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982)("Careful adherence to the 'state action' requirement . . . also avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.").

Although a private individual or corporation can act under color of state law, his, her, or its actions must occur where the private individual or corporation is a willful participant in joint action with the State or with an

9

agent of the State. Dennis v. Sparks, 449 U.S. 24, 27-28 (1980). Purely private conduct, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Bivens doctrine. *See* Lugar v. Edmondson Oil Co., supra, 457 U.S. at 936; and Burton v. Wilmington Parking Authority, 365 U.S. 715, 721 (1961).

The RICO criminal statute, 18 U.S.C. § 1964(c), cannot be the basis of a civil action filed by a private citizen. *See* Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973)(a private citizen does not have a judicially cognizable interest in the prosecution or non-prosecution of another person); Diamond v. Charles, 476 U.S. 54, 64-65 (1986)(*applying* Linda R.S. v. Richard D. and collecting cases); Doyle v. Oklahoma State Bar Ass'n, 998 F.2d 1559, 1566-1567, 1993 U.S. App. LEXIS® 18064 (10th Cir. 1993); Lane v. Correll, 434 F.2d 598, 600 (5th Cir. 1970); Nader v. Saxbe, 162 U.S.App.D.C. 89, 497 F.2d 676, 679 nn. 18-19, 681 n. 27 (D.C.Cir. 1974)(n. 27: "Thus her [Linda R. S.'s] complaint in effect sought a judicial order compelling prosecution of a particular individual, a practice shunned by American courts."); and *cf.* United States v. Passman, 465 F. Supp. 736, 741 & n. 13 (W.D.La. 1979)("the defendant lacks standing to challenge the failure of the government to instigate criminal proceedings against another person.").

10

Moreover, the plaintiff's contention that the defendant caused him lost wages is based on an invalid deduction of fact, which is best articulated in the maxim "*Post hoc, ergo propter hoc.*"  This maxim is usually translated as "After this, therefore, on account of this."  Most federal courts have rejected the validity of that maxim in determining whether a causal connection exists. *See*, *e.g.*, the order of the late Honorable Charles E. Simons, Jr., United States District Judge, in Orr v. Gardner, 261 F. Supp. 39, 41 n. 1 (D.S.C. 1966)("*Post hoc, ergo propter hoc* in logic is usually intended as 'the fallacy of arguing from mere temporal sequence to cause and effect relationship.'"); and Loyd v. Bullhead City, 931 F.2d 897 [Table], 1991 U.S.App. LEXIS® 9824, * 17, 1991 WESTLAW® 70735 (9th Cir., May 6, 1991), where the United States Court of Appeals for the Ninth Circuit commented: "Loyd's argument presents a classic example of the logical fallacy known as *post hoc, ergo propter hoc*, *i.e.*, that a cause-and-effect relationship can be shown from a mere temporal sequence."

Although a district court, when evaluating a pleading under 28 U.S.C. § 1915, must assume that the allegations in the pleading are true, a district court is not required to accept unwarranted deductions of fact.  *See* Gersten v. Rundle, 833 F. Supp. 906, 910, 1993 U.S.Dist. LEXIS® 13589 (S.D.Fla. 1993); and Clegg v. Cult Awareness Network, 18 F.3d 752, 754-755, 1994

11

U.S.App. LEXIS® 4103 (9th Cir. 1994)(district court not required to accept conclusions that cannot be reasonably drawn from facts alleged).  *See also* Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987)(district court "not required to 'accept as true legal conclusions or unwarranted factual inferences'"); Bender v. Suburban Hospital, Inc., 159 F.3d 186, 192, 1998 U.S.App. LEXIS® 27790 (4th Cir. 1998); and *cf.* Papasan v. Allain, 478 U.S. 265, 286 (1986)("Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation."). Moreover, since there is no constitutional right to a prison job, the plaintiff's inability to work in a prison job is not compensable.  *See*, *e.g.*, Bulgur v. United States Bureau of Prisons, 65 F.3d 48, 50, 1995 U.S.App. LEXIS® 27337 (5th Cir. 1995)(federal prisoner); and Dupont v. Sanders, 800 F.2d 8, 10, 1986 U.S.App. LEXIS® 27986 (1st Cir. 1986)(state prisoner). Accordingly, the plaintiff cannot recover $24,500 for lost wages.

Since the plaintiff cannot recover $24,500 for lost wages, the amount in controversy in this case falls from $75,000 to $51,500.  As a result, this case is not maintainable as a diversity action because the jurisdictional amount ($75,000) of 28 U.S.C. § 1332 is obviously not met under any accepted theory for calculating an amount in controversy, even though complete diversity of

parties may exist in this case.[5]  *See* <u>Miller v. Lifestyles Senior Housing Managers</u>, 2005 WESTLAW® 1397401, *1 [no LEXIS® citation available] (E.D.Cal., June 13, 2005)("Diversity jurisdiction requires complete diversity of citizenship among the parties, as well as a minimum amount in controversy of more than $75,000."); and <u>Jennings v. University of North Carolina at Chapel Hill</u>, 240 F.Supp.2d 492, 497, 2002 U.S.Dist. LEXIS® 25254 (M.D.N.C.2002).  *See also* <u>McCarty v. Amoco Pipeline Co.</u>, 595 F.2d 389, 390-395 & nn. 2-7 (7th Cir. 1979)(collecting cases); <u>Cowan v. Windeyer</u>, 795 F. Supp. 535, 536-537, 1992 U.S.Dist. LEXIS® 8657 (N.D.N.Y. 1992); <u>Mutual First, Inc. v. O'Charleys of Gulfport, Inc.</u>, 721 F. Supp. 281, 282-283 & nn. 3-4, 1989 U.S.Dist. LEXIS® 11231 (S.D.Ala. 1989); <u>Woodmen of World Life Insurance Society v. Great Atlantic & Pacific Tea Co.</u>, 561 F. Supp. 640, 641-642 (N.D.Ill. 1982); and <u>Carr v. Mid-South Oxygen, Inc.</u>, 543 F. Supp. 299, 300 (N.D.Miss. 1982).

---

[5]The plaintiff appears to have been a resident of Florida prior to his current federal incarceration.  Most cases have uniformly held that incarceration does not change a prisoner's domicile for purposes of the diversity statute.  *See* <u>Polakoff v. Henderson</u>, 370 F. Supp. 690, 693 (N.D.Ga. 1973)("A prisoner does not acquire a new domicile in the place of incarceration, but retains the domicile he had prior to incarceration."), *affirmed*, 488 F.2d 977 (5th Cir. 1974); and *cf.* <u>Jones v. Hadican</u>, 552 F.2d 249, 250 (8th Cir.)(*per curiam*)("With respect to the domicile of prisoners, the traditional rule is that a prisoner does not acquire a new domicile when he is incarcerated in a different state; instead he retains the domicile he had prior to his incarceration."), *cert. denied*, 431 U.S. 941 (1977).  *See also* <u>Nouse v. Nouse</u>, 450 F. Supp. 97, 100 (D.Md. 1978)("But plaintiff has not lost his status as a citizen of Maryland and become a citizen of Pennsylvania simply because of his incarceration in that state.").

# *Recommendation*

Accordingly, it is recommended that the District Court dismiss the above-captioned case *without prejudice* and without issuance and service of process. See Denton v. Hernandez, supra; Neitzke v. Williams, supra; Haines v. Kerner, supra; Brown v. Briscoe, 998 F.2d 201, 202-204 & n. *, 1993 U.S.App. LEXIS® 17715 (4th Cir. 1993), *replacing* unpublished opinion originally tabled at 993 F.2d 1535 (4th Cir. 1993); Boyce v. Alizaduh, supra; Todd v. Baskerville, supra, 712 F.2d at 74; 28 U.S.C. § 1915(e)(2)(B) [essentially a redesignation of "old" 1915(d)]; and "new" 28 U.S.C. § 1915A[as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal].  I also recommend that the plaintiff's motion for discovery (Entry No. 3), motion for service of process (Entry No. 4), and motion for security bond (Entry No. 5) be **denied.**  I also recommend that this case be deemed to be a **"strike"** for purposes of the "three strikes" rule of 28 U.S.C. § 1915(g).  The plaintiff's attention is directed to the Notice on the next page.

May 25, 2006  
Greenville, South Carolina

WILLIAM M. CATOE  
UNITED STATES MAGISTRATE JUDGE

14

### Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
### &
# The **Serious Consequences** of a Failure to Do So

The plaintiff is hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within **ten (10) days** of the date of service.  28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail.  Fed. R. Civ. P. 6.  A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge.  *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, **but not thereafter**, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections.  **Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections.**  *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995).  Failure to file specific, written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge.  *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985).  Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object.  In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues.  Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991).  *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985).  In Howard, *supra*, the Court stated that general, non-specific objections are *not* sufficient:

> **A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object.  The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless.  \* \* \* This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act.  We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.**

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> **Just as a complaint stating only 'I complain' states no claim, an objection stating only "I object" preserves no issue for review.  \* \* \*  A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.**

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 6 n. 1 (3rd Cir. 1984)(*per curiam*)("plaintiff's objections lacked the specificity necessary to trigger *de novo* review").  **This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections.**  *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

**Larry W. Propes, Clerk**
**United States District Court**
**Post Office Box 10768**
**Greenville, South Carolina 29603**
